## Robertson *v.* Haun, and Conger *v.* Robertson.

After a final decree and execution has issued thereon, a supersedeas may be granted upon sufficient cause.

Where seventeen slaves were sold under an execution from chancery, and the bill of sale to the purchaser misdescribed four of said slaves, as follows: Bob Chessen as Bob *Chism,* Cooper as *Francis* Cooper, Merritt Prudence as *Merritt,* and George Ray as *Ray*—Held, that this was not a sufficient ground to sustain a supersedeas.

At the January term, 1839, the complainant obtained a decree of foreclosure of a mortgage of certain negro slaves therein mentioned, in number thirty-five; and an order of sale of said negroes, on a credit of six months, the purchaser giving bond and security. Some of the negroes were in Madison county, some in Warren, some were dead, some had been transported out of the state, and some were supposed to be in the state, but had not been found. The decree specified the time of sale of such of the negroes as were in Madison and Warren counties, and made a provision for the sale of the others as they should be found.

The negroes in Madison county were sold by the sheriff on the 29th of April, 1839, to John B. Conger, (the petitioner,) under the decree, for which the sheriff executed to Conger a bill of sale, which is made part of Conger's petition. The bond which Conger and his securities executed for the purchase money, was returned to the court, with the return or report of the sheriff of the fact of the sale of the negroes in Madison under the decree, and the taking therefor bond and security, &c.

This bond was forfeited by non-payment at its maturity, and the forfeiture operated as a judgment, upon which execution issued to the sheriff of Claiborne county, returnable to June term, 1840. This execution was returned "no property found," although it was notorious that Conger was a man of great wealth, and had real property and slaves in the county of Claiborne.

At the June term, 1840, an alias execution issued to the sheriff of Claiborne county, returnable to the present term of this court—which has not been returned.

On the third day of the term, Conger filed his petition for a supercedeas, which, on the seventh day of the term, was granted.

The petition for a supercedeas sets forth, that, under the foregoing decree, the sheriff of Madison advertised and sold to the said Conger seventeen negro slaves therein named, for the aggregate sum of twelve thousand one hundred and thirty-five dollars, for which he gave bond, &c.; and that said sheriff executed to him a bill of sale of the negroes so purchased by him, but that some time afterwards he, Conger, discovered that the bill of sale only conveyed to him thirteen negroes, and that said bill of sale misdescribes the names of some of them; that the sheriff's report has never been confirmed; that executions issued as aforesaid; and in the affidavit Conger swears that he has all the seventeen negroes in his possession.

Such are the facts as they appear on the record. The motion is to set aside the supercedeas as altogether irregular and unprecedented.

MANDEVILLE for the motion.

First. A supersedeas does not lie after a judgment by this court and execution thereon. The forfeiture of Conger's bond for the purchase money was, by operation of law, a judgment, and cured all errors. The High Court has expressly decided this in the case of the forfeiture of a forthcoming bond, to which this is exactly similar.

Second. The alias execution was returnable by law to the first day of this term, and the petition for a supercedeas was not made until the third day, two days after the return day, and after the sheriff was bound by law to have brought the money into court, and the execution with the return of "satisfied." The execution expired on the first day of the term, and the order presents the singular incongruity or impossibility of superceding an execution after it was fully *functus officio*. The order commands the sheriff not to do that which, by his duty, he was bound to have done already, and which, in contemplation of law, he had already done. The order is therefore given to arrest the completion of an act already completed. It is therefore, *ipso facto*, null and void; or, if it have any effect at all, it is to give the sanction and protection of the court to its own ministerial officer for a plain and deliberate

Robertson *v*. Haun, and Conger *v*. Robertson.

violation of the precept of the court, and of his sworn official duty.

Third. Even if the petition was not barred by the judgment of the court, and by its *ex post facto* operation, it shows no ground for a supercedeas. It makes no charge against the validity of the sale, or of any injury sustained by the errors complained of in the sheriff's bill of sale of the negroes. It shows no cause, and makes no prayer to set aside the sale, and therefore the tender of the negroes into court is nugatory. On the contrary, the petitioner swears that he has possession, and shows that he has undisturbed possession, of all the negroes which he claims, and only requires that a perfect title to them should be made to him. Before such a prayer can be entertained by the court, he must bring into court the purchase money, and show that he is claiming only his rights and is willing to perform his duties; and that he is not merely setting up a sham complaint and availing himself of the leniency of the court to vex, delay and defraud an innocent party of his rights, acquired under and sanctioned by the decree of this court. There is no fraud, collusion or improper conduct whatever charged upon the complainant; there is no injury or damage whatever charged to have been received; there is not even a suggestion of any probable or threatened injury or disturbance. On the contrary, the whole petition bears on the face of it conclusive evidence of its real design, which is merely to evade the just process of this court to compel the payment of a debt for which the petitioner himself shows that he received a full consideration. He throws no shadow of impeachment upon the contract by which he is bound; and appears before a court of equity in the unenviable attitude of a man seeking to protract the payment of a *bona fide* debt, and asking the interference of the court to protect him against a remote contingency of disturbance, without first doing that justice without which he soils the portals of a court of chancery, by paying what he admits he is bound to pay, and ought long since to have paid.

Fourth. The sheriff's bill of sale is conclusive after acceptance upon the purchaser. The sheriff who acted as commissioner is a sworn officer of this court in performance of the duties imposed upon him by it; and his acts in pursuance of his duty are conclusive evidence of the facts, until they are avoided on the ground of

fraud. No fraud is charged upon the sheriff; but the petitioner comes before the court to impugn and invalidate his official act, upon his simple and interested affidavit that he bought more slaves than the sheriff's bill of sale gives him title to. In this state of the case the bill of sale is conclusive, and therefore the allegation in the petition, that the petitioner bought more slaves than the bill of sale conveys title to, affords no ground for a supercedeas. The complainant is entitled to his money at all events; and the petitioner has his remedy by impeaching the bill of sale, and requiring a title to be made according to the truth of the case.

If the purchaser, through gross neglect, fails to obtain a perfect title—if with his eyes open he takes a defective title, when he had a right to demand a good one, before complying with his part of the contract—the damage must be his own, and not that of an innocent party, whose property he thereby gets into his possession, and then refuses to give him the stipulated consideration for it. The purchaser has acted in his own wrong; and no man is allowed by law, and least of all in equity, to take advantage of his own wrong, to the prejudice of an innocent party.

Fifth. Besides, even if the simple allegation of the petitioner could nullify the official act of the sheriff, and enable him to avail himself, to the prejudice of the complainant, of his own neglect and wrong, the facts (taking them to be true as they appear before the court, show that the obtaining of a good title is not the real object of the petitioner; but that his main object is to obtain delay. If a good title were his real object, he would have brought the money into court, and prayed that the court would keep it until he had obtained a good title, and for the court to direct a title to be made to him according to the truth of the case; and this he was bound to do, so soon as he discovered his title to be defective. But he does the very reverse. He forfeits his bond; he suffers two executions to run their whole length against him; and when he discovers that he can no longer evade or protract the process of the law, he then sets up his defective title as a ground for still further delay. The petition alleges that some time after the purchase he discovered the defect; and yet he slumbers over it till he has exhausted all the indulgencies of the law, and again makes his

Robertson *v.* Haun, and Conger *v.* Robertson.

own neglect a still further pretence for indulgence and delay. But however unfavorable the attitude of the petitioner, and however palpable his design to procrastinate the payment for the slaves, without these palpable *indici animi*, the point can not be escaped, that his defective title, even if true, is no ground for a supercedeas, but merely for an order to perfect his title.

QUITMAN and McMURRAN contra.

The petition shows in this case that the purchaser has not received a title to the property purchased by him under a decree of this court. By the decree, and by general principles, he is entitled to the evidence of his title, and surely he will not be required to pay his bond until such title shall be made.

He offers to return the property purchased, or to pay the money on receiving a title; and has moved the court for a rule on the commissioner to make a full report of his proceedings under the decree, and to perfect his title according to said decree.

An execution was out against him for the full amount of his bond. It appears that this bond was given on the purchase of some slaves not named in the decree, and that others named in the decree have not been conveyed by the commissioner as directed.

The petitioners have no remedy but to ask the aid of the court to protect them from the summary execution until their title can be perfected. It is the duty of the plaintiffs to see that the report be corrected and the title completed, if they desire to hold on to this sale, or if not, to set aside the report and take back the slaves, or re-sell them. The commissioner was their officer, not ours. It was their duty to see to the correctness of his proceedings, in returning his report.

The conduct of the sheriff of Claiborne county is not a matter of inquiry here.

It is too common for inferences of fraud, &c. to be drawn wherever a delay, however produced by the error of parties or officers, occurs in the way of a creditor. The circumstances of this petition and record do not justify it.

Has Conger the title to the slaves purchased, which this court has guaranteed him by the decree? If not, he should not be compelled to pay in this summary way without being heard.

23*

Dismiss the supercedeas and make the money on the bond, and the complainants may again seize on these slaves under the further sales of their decree.

The petition should be answered before it is disputed.

THE CHANCELLOR.

The case is briefly this. In December, 1838, Robertson obtained a decree in this court against William G. Haun, foreclosing a mortgage, and ordering a sale of a number of negro slaves, embraced in the mortgage. At the sale made by the commissioner appointed to execute the decree, Conger became the purchaser of seventeen of the slaves sold, and gave bond, with security, according to the statute upon that subject, for the payment of the purchase money, which bond was forfeited, and an execution issued thereon, against which Conger filed his petition and obtained a supercedeas, alledging certain errors and defects in the proceeding which are supposed to affect his title to the slaves which he so bought. A motion is now made to discharge that supercedeas. The counsel for the motion has thought proper in his written argument to designate the order granting the supercedeas as unprecedented. To this it may be remarked, that it does not follow, as a very logical conclusion, that a case without an exact precedent is therefore without the pale of remedial justice. Some reference to the practice of courts of chancery in regard to judicial sales, both in England and the United States, would doubtless have saved counsel from falling into this error. The theory of sales of this character is, that the court is itself the vendor, and the commissioner or master its mere agent in executing its will. The whole proceeding, from its incipient stage up to the final ratification of the reported sale and the passing of the title to the vendee and the money to the person entitled to it, is under the supervision and control of the court. The court will confirm or reject the reported sale, or suspend its completion, or even set aside the confirmation of the report, according as the law and justice of the case may require. Even after the confirmation of a reported sale if it appears that any fraud, error or mistake has intervened, injuriously affecting the interest of the parties concerned, the court will set aside the order of confirmation and rec·

tify the evil, or order a re-sale upon petition for that purpose. In such case the purchaser is not required to file a bill, but may attain his ends by mere petition. Laight v. Pell, 1 Edw. Ch. R. 577; 2 Mollay 385; 2 M'Cord's Ch. R. 159; 2 Har. and John. 346.

The practice in this state in relation to such sales, has not been very regular or uniform. By the English practice the whole proceeding is considered *in fieri* until the report is confirmed, the purchase money paid, and the conveyances executed and delivered. After a confirmation of the report of sale, a rule is then made upon the purchaser to pay the purchase money into court; this done, a reference is made to the master to report whether a good title can be made; and upon his reporting in the affirmative the money is ordered to be paid over and the titles delivered. Blake's Ch. 312. This practice has not been strictly adhered to in this state. Heretofore, as far as my knowledge of the practice goes, it has been the habit of the commissioners to give titles as soon as the purchaser paid the purchase money, or if sold on credit, as soon as the bonds were executed and delivered. Although we may not have adopted the English practice in form, yet its leading principles have doubtless been preserved. I entertain no doubt then that the petitioner, so far as form is concerned, is rightly before the court. The only question then is, whether he has shown sufficient to entitle him to the relief asked for.

There are two grounds taken in the petition. First. That the names of a portion of the slaves purchased by him, as designated by his bill of sale from the commissioner, are not embraced and described in the decree under which he purchased. I think it is obvious that the names of the slaves which the petitioner says are not mentioned in the decree, are in fact there sufficiently described to leave no doubt that they are identically the same with those mentioned in the bill of sale. Although there is some variance between the description in the bill of sale and in the decree, yet I think it will be found to consist rather in the difference of spelling, and the addition or omission of surnames, than in fact. The slaves are described in the decree as Bob Chesser, Cooper, Merritt Prudence, George Ray, and Bill Gage. In the bill of sale as Bob Chism, Francis Cooper, Merritt, Ray, and Bill Gage. It will thus be seen that the names correspond, except that in one instrument

they are described by two names, and in the other by one of those names only. · The decree orders the sale generally of all the slaves mentioned in the mortgage, and then makes an attempt at describing them. The slaves bought by the defendant, as named in his bill of sale, are found to correspond with those named in the mortgage. If, therefore, there was even a total omission of the names in the descriptive part of the decree, I do not think that it would at all affect the petitioner's title; *id certum est quod certum potest reddi.* The omission in the descriptive part of the decree amounts at most to a mere clerical misprison, which could be corrected at any time upon proper application. Tomlins *v.* Polke, 1 Russell 475.

The second ground taken in the petition is, that four of the slaves bought by him are not included in the bill of sale. I cannot admit that this renders his title defective, although the decree directs the commissioner to make a bill of sale. This is intended for the mere convenience of the purchaser, and is not an essential ingredient in his title. The commissioner acts as the mere agent of the court in selling. ·It would not be pretended that in a case between private parties where an agent was authorized to sell personal property and gave a bill of sale, that such bill of sale was indispensible to the purchaser's title. In the sale of personal property the title passes by delivery ; it is not necessary that it should be evidenced by writing. It would be perfectly competent for the petitioner to establish his title to these slaves by parol evidence connected with the decree and mortgage in the case. Although the court will always protect its purchaser in a fair exercise of his rights, yet it will not permit him to avoid the sale by formal or technical objections to the title. The objections here, as I understand them, are not that the petitioner did not obtain a title to the slaves by his purchase, but that the evidence of that title is irregular and defective. A purchaser at a judicial sale as in all others, claiming to be relieved, should make out a fair and plain case for relief; it is not every small defect or variation from the description of the property sold, that will avail him. If he gets substantially what he contracted for, he must be satisfied. 2 Harris and Gill, 390.

I am accordingly of opinion that the supercedeas granted in this case be discharged.